UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| STERLING COMPUTERS CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>JULIE HASKELL,<br><br>    Defendant. | 4:17-CV-04073-KES<br><br>ORDER DENYING MOTION TO DISMISS |

On May 30, 2017, plaintiff, Sterling Computers Corporation, filed a complaint alleging a violation of the Defend Trade Secrets Act (DTSA) and misappropriation of trade secrets under South Dakota's Uniform Trade Secrets Act (UTSA) against defendant, Julie Haskell. Docket 1. On May 31, 2017, Sterling filed an Emergency Motion for Expedited Discovery and to Preserve Evidence. Docket 6. Haskell moves to dismiss both counts of the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Docket 18. Sterling opposes the motion. Docket 28. The parties stipulated to set aside Sterling's Emergency Motion for Expedited Discovery and to Preserve Evidence pending the outcome of Haskell's motion to dismiss (Docket 22), and the court entered an order adopting the stipulation. Docket 23. For the reasons that follow, the court denies Haskell's motion to dismiss.

## BACKGROUND

The facts alleged in the complaint, accepted as true, are as follows:

Sterling, a California corporation with its principal place of business in Dakota Dunes, South Dakota, sells information technology solutions and products to government and education clients. On or about November 6, 2006, Haskell began her employment with Sterling as a Senior Account Executive while living in Nebraska. Upon her request, Haskell was transferred to Colorado Springs, Colorado in August 2016.

As a value-added reseller of IT products, Sterling utilizes a variety of vendors when its salespersons bid for client contracts. Sterling uses Salesforce, an internet database, to store and retrieve information relevant to its business operations. Such information includes client lists, contact information, notes on clients and potential clients, and current project bids submitted by Sterling. Current employees of Sterling can access the Salesforce database with a unique username and password. Sterling maintains reports on its employees' access to Salesforce.

When Haskell began her employment with Sterling in 2006, she signed a form acknowledging that she received and read Sterling's employee handbook, which contained a confidentiality policy. In 2011 and 2015, Haskell signed additional forms acknowledging her receipt of the revised handbooks. Both the 2011 and 2015 handbooks contained non-disclosure policies and listed some of Sterling's confidential information subject to the non-disclosure policies.

On or about February 10, 2017, Haskell terminated her employment with Sterling to accept a position with a competitor, M2 Technology, a Texas corporation with an office in Colorado. The next day, the President of Sterling began to shut off Haskell's access to Sterling's email and network when he noticed that Haskell was signed into the network and deleting emails from her inbox. He then terminated Haskell's connection and locked her out of Sterling's system.

Following Haskell's termination, Mike Porach, a Sterling Pre-Sales Solutions Architect, was assigned to follow up with the Missile Defense Agency account that Haskell had been in charge of prior to leaving Sterling. Porach discovered that Haskell did not ask Neutanix, a vendor whose products were quoted to the Missile Defense Agency by Sterling, to perform a deal registration. A deal registration is a feature used by Neutanix that gives the channel partner—here Sterling—priority for a lead and guaranteed pricing during the negotiation. Competitors cannot negotiate with the lead during a set period of time if a deal registration is in place.

Porach then discovered that Haskell had asked Neutanix to put the deal registration in her name rather than in Sterling's name, which led Sterling to search Haskell's previous emails and Salesforce log. Sterling discovered that on or about January 13, 2017, a few weeks before terminating her employment with Sterling, Haskell had requested assistance from another Sterling employee to create a list on Salesforce of all Colorado contacts, which is highly unusual. Additionally, several Sterling customers have attempted to reply to Haskell's

prior Sterling email address regarding sales projects that Haskell initiated while at Sterling.

Sterling alleges that Haskell continues to possess confidential information, specifically the details of the Missile Defense Agency project and a list of Sterling's Colorado contacts from Salesforce, and she is misusing such information to unfairly compete with Sterling. Thus, Sterling brings suit against Haskell for violation of the DTSA and UTSA.

**LEGAL STANDARD**

A court may dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The court assesses plausibility by considering only the materials in the pleadings and exhibits attached to the complaint, drawing on experience and common sense, and reviewing the plaintiff's claim as a whole. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012). Inferences are construed in favor of the nonmoving party. *Id.* at 1129 (citing *Braden v. Wal-Mart Stores, Inc.*, 588

F.3d 585, 595 (8th Cir. 2009)). A well-pleaded complaint should survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

## DISCUSSION

Count 1 of Sterling's complaint alleges that Haskell violated the DTSA, and Count 2 alleges that Haskell misappropriated trade secrets in violation of South Dakota's UTSA. Docket 1. Haskell argues that Sterling's complaint fails to state a claim because it fails to provide sufficient facts to establish the existence of a trade secret and fails to allege actual or potential damages. Docket 19 at 1.

## I. Allegation of the Existence of a Trade Secret

Under both the DTSA and UTSA, information, such as "patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," is a trade secret if it derives actual or potential independent economic value from not being generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and the owner has taken reasonable measures under the circumstances to maintain its secrecy. *See* 18 U.S.C. § 1839(3); SDCL § 37-29-1(4). In its complaint, Sterling alleges Haskell had access to, among other things, information regarding past and current client projects; customer lists, profiles, and preferences; deal registrations; and pricing structures with clients. Docket 1 ¶ 70.

5

### A. Contact List

Haskell argues Sterling's allegation that a "contact list" is a trade secret is insufficient to survive under *Iqbal* because it does not identify what information in the contact list is a trade secret. Docket 19 at 8. The court disagrees. The factual allegations in the complaint, taken as a whole, do identify plausible trade secret information contained in the contact list that is sufficient to survive a motion to dismiss. *See Braden*, 588 F.3d at 594 (stating "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."). Sterling has pleaded facts that Haskell compiled a list of Sterling's clients and other contacts in Colorado from information in the Salesforce database, which is highly unusual for Sterling salespersons to do, only a few weeks before she terminated her employment with Sterling to work for a competitor. Docket 1 ¶ 21.

Haskell further argues Sterling has not explained how the "contact list" derives independent economic value from not being generally known or readily ascertainable. Docket 19 at 8. Haskell also states that the contact list is not a trade secret because many of Sterling's clients and potential clients are listed on its public website and many of its federal projects are subject to a public bidding process. *Id.* at 9-10.

In its complaint, Sterling outlines how it uses Salesforce, which is a database maintained in Sterling's secure file server and only accessible by employees through a unique username and password. Docket 1 ¶ 39-40.

6

Sterling also alleges how it had employees, including Haskell, sign confidentiality and non-disclosure agreements. *Id.* ¶ 4-8. Its Salesforce database includes client lists, contact information, and current projects of Sterling. *Id.* ¶ 38. It is reasonable to infer that, based on what Sterling alleges in the complaint, the information contained in the restricted Salesforce database is broader than what can be found on public websites. Because Sterling has taken efforts to restrict access to its Salesforce database, Sterling has plausibly established that it derives independent economic value from the information in the database—including the Colorado client contact list—that is not generally known or readily accessible.

Finally, Haskell argues Sterling has failed to provide details explaining how Haskell misappropriated the trade secrets in the contact list. Docket 19 at 9. In response, Sterling contends it alleged sufficient facts regarding the Colorado contact list requested and obtained by Haskell, and it is plausible that Haskell misrepresented her purpose in requesting the list. Docket 28 at 15.

Under the DTSA, the definition of misappropriation includes the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent" by someone who improperly acquired the trade secret. 18 U.S.C. § 1839(5). *See also* SDCL § 37-29-1(2) (defining misappropriation identically). "All that is required at this [motion to dismiss] stage of the proceedings is an allegation

7

that [the defendant] misappropriated [the plaintiff's] trade secrets sufficient to put the defense on notice as to the nature of the claim." *Aggreko, LLC v. Barreto*, 2017 WL 963170, at *2 (D.N.D. Mar. 13, 2017).

Accepting Sterling's facts as true, the court finds that Sterling plausibly alleges that Haskell misappropriated the Colorado contact list. It was highly unusual for Sterling employees to compile geographical lists like Haskell is alleged to have done here. The list was created on the access-restricted Salesforce database. Additionally, Sterling's president noticed Haskell actively deleting her emails the day after she terminated her employment with Sterling. Thus, it is plausible that, as Sterling alleges, Haskell did not create the list to "drive more business" as she stated, and instead used the information contained in the list to unfairly compete with Sterling once she began employment with a competitor.

## B. Bid Structure and Pricing

Haskell also argues that Sterling's allegations regarding "bid structure," "pricing structure," and pricing information related to Sterling's Missile Defense Agency project fail to plead a trade secret because Sterling "has not described the nature or format of the information" to explain how it is a trade secret. Docket 19 at 12-13.

A complaint does not need to "precisely describe all of the reasons" its product is a trade secret because " '[t]he exact nature of the trade secret is a matter for discovery.' " *Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1042 (D. Minn. 2013) (quoting *SL Montevideo Tech., Inc. v. Eaton*

8

*Aerospace, LLC*, 292 F. Supp. 2d 1173, 1179 (D. Minn. 2003)). The court finds that Sterling's complaint contains sufficient factual allegations to plausibly allege that the pricing information about the Missile Defense Agency project is a trade secret. Haskell began working on the Missile Defense Agency project in October 2016. Docket 1 ¶ 15. She put Neutanix's deal registration for the Missile Defense Agency project in her own name instead of Sterling's name, and a deal registration contains guaranteed pricing for a set period of time. *Id.* ¶ 17-18. After she terminated her employment with Sterling, Haskell possessed "information about the pricing structure between Neutanix and Sterling, and the pricing structure between Sterling and the Missile Defense Agency," which was confidential. *Id.* ¶ 55. Thus, there are factual allegations to support Sterling's assertion that Haskell improperly retained information related to Missile Defense Agency bids from Sterling vendors and the proposed pricing of those bids.

Haskell also argues "Sterling must plead how Haskell allegedly obtained and used the alleged trade secret to Sterling's disadvantage." Docket 19 at 14. Sterling's complaint states that "Haskell misappropriated the trade secret data, documents and information described herein by secretly emailing key documents to herself," and by putting the Neutanix deal registration in her own name. Docket 1 ¶ 83. She was also found to be actively deleting her emails after her employment ended. Thus, Sterling has pleaded sufficient facts regarding an alleged misappropriation of the bid structure and pricing information.

## II.   Allegation of Damages

A court may grant an injunction to protect an actual or threatened misappropriated trade secret. 18 U.S.C. § 1836(b)(3)(A); SDCL § 37-29-2. Both the DTSA and UTSA also authorize an award of damages for the actual loss and any unjust enrichment caused by the misappropriation, or a court may impose a reasonable royalty on the misappropriator. 18 U.S.C. § 1836(b)(3)(B); SDCL § 37-29-3(a). Finally, both laws allow a court to award exemplary damages if a misappropriation is willful and malicious. 18 U.S.C. § 1836(b)(3)(C); SDCL § 37-29-3(b).

Haskell argues that under both claims, Sterling must establish that it suffered damages because of Haskell's misappropriation. Docket 19 at 4-5. Haskell contends that Sterling's complaint is flawed because it does not allege a specific proof of harm, actual or threatened, and instead presents legal conclusions void of factual allegations. *Id.* at 15. Haskell cites to *Fedders Corp. v. Haier America Trading, LLC*, 2002 WL 519733, at *5 (S.D.N.Y. Apr. 4, 2002) and *Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 432 F. Supp. 2d 1319, 1335-36 (S.D. Fla. 2006) as support.

*Fedders Corp.* and *Alphamed Pharmaceuticals* are not persuasive here because, in addition to being non-binding authorities on this court, neither case is postured at the motion to dismiss stage. In *Fedders Corp.*, the Southern District of New York, applying Illinois law, stated that damages are "[a] necessary element" in order for a plaintiff to recover compensatory or exemplary damages in a trade secret claim. 2002 WL 519733, at *5. But this

10

analysis arose at the summary judgment stage. *Id.* at *1. In *Alphamed Pharmaceuticals*, the Southern District of Florida concluded that because the plaintiff's trade secret claim was statutorily based, its damages were governed by the statute rather than common law. 432 F. Supp. 2d at 1335-36. Thus, the court concluded nominal damages were not permitted and the plaintiff failed to prove permissible trade secret damages at trial. *Id.* But this damages discussion arose when the defendant moved for judgment as a matter of law. *Id.* at 1334.

Thus, Sterling does not need to establish specific proof of harm, actual or threatened, to survive a motion to dismiss. Sterling has plausibly alleged that Haskell retained trade secret information that, if shared with competitors or used to improperly solicit Sterling clients, could entitle Sterling to injunctive or monetary relief as permitted by both federal and South Dakota law.

**CONCLUSION**

Sterling has pleaded sufficient facts to plausibly establish that the contact list, pricing and bid information, and other pieces of potentially confidential information are trade secrets that derive independent economic value from not being generally known or readily ascertainable. Sterling has also plausibly alleged how Haskell accessed these trade secrets and may have improperly retained them once she terminated her employment with Sterling to work for a competitor. Finally, Sterling is not required to demonstrate proof of damages at the pleading stage. Thus, it is

ORDERED that Haskell's motion to dismiss (Docket 18) is denied.

IT IS FURTHER ORDERED that as stated in the parties' stipulation to set aside Sterling's Emergency Motion for Expedited Discovery and to Preserve Evidence (Docket 22) and the court's order adopting the stipulation (Docket 23), Sterling's reply brief for its Motion for Expedited Discovery and to Preserve Evidence (Docket 6) is due on or before **February 15, 2018**.

DATED this 1st day of February, 2018.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE